NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0350n.06

Case No. 25-3427

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 04, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| JARED METZGER, | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: BATCHELDER, MOORE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. While investigating a drug-trafficking organization, police officers obtained a search warrant that allowed them to seize Jared Metzger's cell phone. They then found images of child sexual abuse on that phone, so a grand jury charged Metzger with receiving and possessing child pornography. Metzger moved to suppress the images discovered on his phone, arguing that the government didn't have probable cause to justify the search. But the district court denied his motion. Finding no error, we affirm.

I.

Ohio police officers learned from a confidential source that Devin McFaul was trafficking methamphetamine. A few months later, officers pulled over two men, who admitted they had just left McFaul's home. The men explained that they had tried to buy methamphetamine from McFaul, but he didn't "answer the door or the phone." R. 22, Pg. ID 113. So officers searched

through trash from McFaul's residence and other addresses associated with the investigation to find evidence of drug trafficking. Those searches uncovered drug packaging, needles, baggies, gloves, and methamphetamine powder and residue.

Officers also began surveilling McFaul's home. One day, detectives observed a man exiting McFaul's residence and driving away in a car with an invalid registration. They stopped the car and identified the driver as Jared Metzger, who had an outstanding warrant for his arrest. After arresting Metzger, they searched him and found a plastic baggie containing a marijuana product. Metzger told the officers that he knew they had stopped him because he left McFaul's home. The officers interpreted that statement to mean Metzger knew they were surveilling McFaul. Two days later, Metzger tagged McFaul in a Facebook post that mentioned one of the arresting officers by name and referred to him as a "predator." *Id.* at 116. Officers believed that Metzger's post alerted McFaul to their investigation and caused McFaul to start driving a different car to avoid detection.

As the investigation continued, officers learned that Metzger was living at McFaul's home. They then observed Metzger driving one of McFaul's cars and pulled him over because he had another outstanding arrest warrant. During the stop, a drug dog alerted to the presence of narcotics. And while searching the car, officers discovered a document that appeared to be a drug ledger.

Based on their investigations, officers sought search warrants for McFaul's home and two related addresses. A municipal judge approved the warrants, which allowed officers to collect items related to the drug-trafficking scheme, including "cell phones and their contents." R. 22-1, Pg. ID 125, 127, 129. Officers then executed those warrants and discovered two cell phones that belonged to Metzger.

While analyzing one phone's contents, an investigator discovered an image depicting child sexual abuse. The investigator immediately stopped the search and sought another warrant to search Metzger's phones for further evidence of child pornography. After a judge granted that warrant, a search uncovered 745 images and 36 videos of child pornography. Some of those images and videos depicted sadism and bestiality. Investigators also discovered that Metzger had offered such material for sale online, some of which depicted children as young as three years old.

As a result, a federal grand jury charged Metzger with one count of receiving and distributing child pornography and one count of possessing child pornography. Metzger moved to suppress all the evidence obtained from his cell phone, arguing that the affidavit supporting the original warrant didn't establish probable cause to search the phone. The district court denied his motion. It determined that regardless of whether there was probable cause, the officers acted in good faith by relying on the warrant to search Metzger's phone. Metzger eventually pled guilty to possessing child pornography, and the government dismissed the distribution charge. But Metzger preserved his right to appeal the denial of his suppression motion. He now exercises that right.

II.

Metzger first argues that the search-warrant affidavit didn't establish probable cause to search his cell phone, so the district court erred by refusing to suppress evidence from that phone. When a district court denies a suppression motion, we review its legal conclusions de novo and its factual findings for clear error. *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc). In doing so, we consider the evidence in the light most favorable to the government. *United States v. Simmons*, 129 F.4th 382, 386 (6th Cir. 2025).

A search warrant that isn't supported by probable cause violates the Fourth Amendment. *See* U.S. Const. amend. IV. And probable cause exists when there's a "fair probability that

contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). But not every Fourth Amendment violation requires the "last resort" remedy of suppressing evidence recovered because of the violation. *Davis v. United States*, 564 U.S. 229, 237 (2011) (quotation omitted). For instance, when police officers act in good faith, courts don't order suppression because it doesn't deter official misconduct. *United States v. Leon*, 468 U.S. 897, 907–08 (1984). Here, the district court correctly denied Metzger's motion to suppress the evidence obtained from his cell phone because the officers relied in good faith on the warrant.

Start with Metzger's requested relief: suppression. The Fourth Amendment "says nothing" about excluding evidence obtained by unlawful searches. *Davis*, 564 U.S. at 236. Instead, suppression's "sole purpose . . . is to deter future Fourth Amendment violations." *Id.* at 236–37. So we suppress evidence only when the benefits of deterring unlawful police behavior outweigh the substantial costs of suppression. *Herring v. United States*, 555 U.S. 135, 141 (2009). Those costs include eliminating reliable evidence and letting guilty defendants free.

When police officers act in good faith, the benefits of suppression usually don't outweigh those significant costs. *Leon*, 468 U.S. at 907–08. Thus, suppression generally isn't appropriate "when officers obtain a warrant from a neutral judge" and rely on that judge's conclusion that probable cause exists. *United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021). However, if the affidavit supporting a warrant so obviously lacks probable cause that an officer's good-faith reliance on the warrant would be unreasonable, suppression might be justified. *Leon*, 468 U.S. at 923. In other words, "bare bones" affidavits don't suffice. *Reed*, 993 F.3d at 450 (quotation omitted). But if an affidavit establishes a "minimally sufficient nexus" between evidence of a crime and the place to be searched, officers can reasonably rely on the warrant. *Id.* (cleaned up). That's exactly what happened here—the officers went to a municipal judge, swore out an affidavit,

and obtained a search warrant that included a nexus between the places to be searched and the evidence establishing probable cause.

The 14-page search-warrant affidavit established a sufficient connection between Metzger's phone and criminal activity. A "minimally sufficient nexus" exists when there's any connection between the criminal activity and the place to be searched, regardless of how remote or slight. *See id.* at 451. That standard was met here. For starters, the affidavit noted that Metzger lived at McFaul's residence, where several individuals bought or attempted to buy drugs. The affidavit also described officers' repeated recovery of drugs, drug packaging, and other paraphernalia from the home's trash. Plus, Metzger indicated that he knew about officers' surveillance of McFaul by making a Facebook post that named an arresting officer and tagged McFaul. Officers believed that post caused McFaul to start driving a different car to hide his drug-trafficking activities. And construing the evidence in the light most favorable to the government, there was a fair probability that Metzger made the post from a cell phone. Finally, during a traffic stop, a drug dog alerted to narcotics in McFaul's car—which Metzger had been driving. That car also contained a drug ledger. So there was enough evidence connecting Metzger and his phone to drug-trafficking activity to make the officers' reliance reasonable.

The affiant detective's experience further supported this connection. An officer's "training and experience" can strengthen an affidavit's connection between criminal activity and the place to be searched. *Id.* at 452. That additional background makes good-faith reliance on the warrant even more reasonable. *See id.* Here, the affiant detective had worked on drug investigations for over six years. Based on that experience, he explained that drug traffickers often use cell phones to facilitate transactions. A vast amount of evidence indicated that McFaul was regularly selling drugs, and the affidavit provided a reasonable basis to believe that Metzger was involved too.

So the detective's testimony bolstered the affidavit's indication that Metzger's phone had at least a "minimal connection" to criminal activity. *Id.* at 451. Thus, the officers could reasonably rely on the warrant to search Metzger's phone.

Metzger argues that the officer's testimony didn't establish a sufficient nexus between Metzger's cell phone and drug trafficking to justify good-faith reliance. We disagree. The affidavit established a connection between Metzger and the drug-trafficking scheme based on his Facebook post, the ledger in the car he drove, the drug dog's alert to narcotics in that car, and his residence at a known drug-trafficking location. It also showed a connection between phones and the scheme. Specifically, two buyers had tried to call McFaul on the phone to purchase drugs when they came to his residence. What's more, there was a reasonable probability that Metzger's Facebook post came from his phone. And officers believed that post tipped off McFaul to their investigation and caused him to switch cars. In short, the affidavit cleared the "low" bar that permitted officers to rely on the search warrant in good faith. *Id.* at 454.

Metzger also claims that applying the good-faith exception here would encourage police misconduct. But the suppression remedy applies only to violations committed "deliberately, recklessly, or with gross negligence." *Davis*, 564 U.S. at 240. The officers here didn't act with such "flagrancy." *Id.* at 238 (quotation omitted). Instead, they reasonably relied on a warrant that detailed Metzger's Facebook post, the drugs and packaging pulled from his residence, the buyers' attempts to purchase drugs by calling a phone, the detective's statement about drug traffickers' cell-phone usage, and Metzger's use of a car that contained a drug ledger and made a drug dog alert. Altogether, this evidence established at least "some connection, regardless of how remote," between Metzger's phone and drug trafficking. *Reed*, 993 F.3d at 451 (quotation omitted).

Finally, Metzger contends that the government's theory proves too much. According to Metzger, it would allow officers to search a college student's phone just because his roommate dealt drugs. But that situation isn't this case. The affidavit here provided more evidence than Metzger's mere co-residence with McFaul. It also detailed his use of McFaul's car, his Facebook post tagging McFaul, and that post's likely impact on McFaul's drug-trafficking operations. So the officers had additional evidence of a connection between Metzger and the drug-trafficking scheme. They didn't search Metzger's phone simply because he lived with McFaul.

Given its strong evidentiary support, this wasn't a "short, conclusory, and self-serving" affidavit that might qualify as bare bones. *United States v. Christian*, 925 F.3d 305, 313 (6th Cir. 2019) (en banc). That means the officers could reasonably rely on the warrant in good faith, so the district court properly denied Metzger's motion to suppress.

III.

Metzger also raises a particularity challenge to the search warrant because it didn't identify which phones the officers could search (or what content from the phones they could access). But Metzger didn't raise this particularity challenge in the district court, so we review for plain error. *United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015). As a result, we may reverse only if the district court made an "obvious or clear" error that affected Metzger's substantial rights and the "fairness, integrity, or public reputation" of the proceedings. *United States v. Page*, 163 F.4th 385, 396 (6th Cir. 2025) (quotation omitted). The district court committed no such error.

Search warrants must describe with particularity any "things to be seized." U.S. Const. amend. IV. But "the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Hanna*, 661 F.3d 271, 286 (6th Cir. 2011) (quotation omitted). And for computers and cell phones, we generally accept warrants that

authorize the seizure and search of the entire device. *United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011); *Bass*, 785 F.3d at 1049–50. Here, the warrant authorized the officers to search cell phones at McFaul's residence "and their contents, including contacts, call history, text messages, emails, voicemails, pictures, videos, and applications and their contents." R. 22-1, Pg. ID 127. That was particular enough to pass muster under the circumstances of this case.

Metzger first claims that the warrant needed to describe exactly which cell phones at the house could be searched. But it didn't need to do that. The officers didn't know exactly how many phones McFaul or Metzger had or what they looked like. And they had never been inside McFaul's property. After all, drug-trafficking investigations require surveillance from a distance so that suspects don't endanger officers or alter their behavior to avoid law-enforcement detection—just like McFaul did here by switching cars. So the "circumstances and the nature of the activity under investigation" reasonably necessitated a broader description in the search warrant. *Hanna*, 661 F.3d at 286 (quotation omitted).

Metzger further contests the warrant's scope as overbroad because it swept in his phone, not just McFaul's. But the affidavit provided a sufficient basis to conclude that Metzger was part of McFaul's scheme. Metzger lived at McFaul's property, posted on Facebook to warn him of an investigation, and drove McFaul's car—which contained a drug ledger and, potentially, narcotics. And based on the customers' call to buy drugs and Metzger's Facebook post, there was a fair probability that his participation involved a cell phone. So there was no requirement to narrow the scope of the warrant to include only McFaul's phones.

Additionally, Metzger contends that a warrant violates the Fourth Amendment when it doesn't limit a search of devices at a home to those owned by a specific person. But he doesn't identify any cases supporting that argument. To the contrary, we've upheld warrants targeting all

computers or phones at a particular location. *See United States v. Whiteside*, 141 F.4th 734, 743 (6th Cir. 2025). That's because officers often don't know exactly what devices might be in a house, even when there's probable cause to think any devices present will contain evidence of a crime. So the warrant covering all devices at McFaul's property was "as specific as the circumstances and the nature of the activity under investigation permit[ted]." *Hanna*, 661 F.3d at 286 (quotation omitted).

Metzger also emphasizes that even though he shared the home with McFaul, the Fourth Amendment protects his individual privacy interests in the property he kept in that shared space. *See* Appellant's Br. at 25 (citing *Mancusi v. DeForte*, 392 U.S. 364, 369–70 (1968)). That's true, but beside the point. Here, the home and its two known occupants were connected with a drug-trafficking scheme. So the warrant provided sufficient particularity by sweeping in both of their property.

Next, Metzger asserts that the warrant wasn't sufficiently particularized because it authorized a search of the phones' entire contents. *See* R. 22-1, Pg. ID 127 (permitting a search of "cell phones and their contents"). But the officers couldn't search for everything on his phone. Instead, they could search only for evidence of specific crimes, including drug possession and trafficking. That's because the issuing judge found probable cause to search the phones only in connection with those offenses. *See United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018). So the officers didn't have a blank check to collect information unrelated to those offenses on Metzger's phone. They recognized as much: Once they found an image consistent with child sexual abuse, the officers immediately stopped the investigation and sought a new warrant for information about *that* offense.

What's more, we reject "most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers." *Richards*, 659 F.3d at 539–40. Criminals frequently conceal their activity by hiding or mislabeling files, so broad searches are often required to find evidence of a crime on a computer. *Bass*, 785 F.3d at 1049. The same goes for cell phones, which provide essentially the same function as computers. *See Riley v. California*, 573 U.S. 373, 393 (2014). Here, the officers couldn't have known exactly where evidence of drug trafficking would be located on Metzger's or McFaul's phones. After all, criminals don't tend to make photo albums entitled "Drug-Trafficking Evidence." Thus, "the broad scope of the warrant was reasonable under the circumstances at the time." *Bass*, 785 F.3d at 1050. So Metzger can't identify an error by the district court—let alone a plain error. His particularity challenge therefore fails.

* * *

We affirm.